Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LR TRUST, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR** |
| vs. | ) | **VIOLATIONS OF THE** |
| | ) | **FEDERAL SECURITIES LAWS** |
| ZYNGA INC., MARK PINCUS, FRANK | ) | |
| GIBEAU, REGINA E. DUGAN, WILLIAM | ) | **JURY TRIAL DEMANDED** |
| GORDON, LOUIS J. LAVIGNE, JR., | ) | |
| CAROL G. MILLS, JANICE M. ROBERTS, | ) | |
| ELLEN F. SIMINOFF, and NOEL B. | ) | |
| WATSON, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff LR Trust ("Plaintiff"), on behalf of itself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through its counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for its Complaint:

## NATURE OF THE ACTION

This is an action brought by Plaintiff against Zynga Inc. ("Zynga" or the "Company") and the members of Zynga's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Zynga will be acquired by Take-Two Interactive Software, Inc. ("Take-Two") through Take-Two's subsidiaries

Zebra MS I, Inc. ("Merger Sub 1") and Zebra MS II, Inc. ("Merger Sub 2") (the "Proposed Transaction").

2.     On January 10, 2022, Zynga and Take-Two issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated January 9, 2022 (the "Merger Agreement") to sell Zynga to Take-Two.   Under the terms of the Merger Agreement, each Zynga stockholder will receive $3.50 in cash and $6.36[1] in shares of Take-Two common stock for each share of Zynga common stock they own (the "Merger Consideration").   The Proposed Transaction is valued at approximately $12.7 billion.

3.     On March 14, 2022, Take-Two filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.   The Registration Statement, which recommends that Zynga stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's, Take-Two's and the combined company's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman").   Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Zynga's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

---

[1] Within a 7.5% symmetrical collar based on a Take-Two share price of $169.19 as the midpoint.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Zynga.

9.      Defendant Zynga is a Delaware corporation, with its principal executive offices located at 699 Eighth Street, San Francisco, California 94103.  The Company is a global leader in interactive entertainment.  Zynga's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ZNGA."

10.     Defendant Mark Pincus ("Pincus") is founder of the Company and Chairman of the Board, and has been a director of the Company since 2007.  Defendant Pincus previously served as Zynga's Executive Chairman from March 2016 to May 2018, and as its Chief Executive Officer ("CEO") from April 2007 to July 2013 and April 2015 to March 2016.

11.     Defendant Frank Gibeau ("Gibeau") has been CEO of the Company since March 2016, and a director since August 2015.

12.     Defendant Regina E. Dugan ("Dugan") has been a director of the Company since 2014.

13.     Defendant William Gordon ("Gordon") has been a director of the Company since 2008.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

14.   Defendant Louis J. Lavigne, Jr. ("Lavigne") has been a director of the Company since 2015.

15.   Defendant Carol G. Mills ("Mills") has been a director of the Company since 2017.

16.   Defendant Janice M. Roberts ("Roberts") is Lead Independent Director and has been a director of the Company since 2017.

17.   Defendant Ellen F. Siminoff ("Siminoff") has been a director of the Company since 2012.

18.   Defendant Noel B. Watson, Jr. ("Watson") has been a director of the Company since 2020.

19.   Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.   Take-Two is a leading developer, publisher, and marketer of interactive entertainment for consumers around the globe.   Take-Two develops and publishes products principally through Rockstar Games, 2K, Private Division, and T2 Mobile Games.   Take-Two's products are designed for console systems, personal computers, and mobile, including smartphones and tablets, and are delivered through physical retail, digital download, online platforms, and cloud streaming services.

21.   Merger Sub 1 is a wholly owned subsidiary of Take-Two.

22.   Merger Sub 2 is a wholly owned subsidiary of Take-Two.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.   Founded in 2007, Zynga has locations in North America, Europe and Asia.   The Company develops, markets, and operates social games as live services played on mobile platforms (such as Apple's iOS and Google's Android), social networking platforms (such as Facebook and Snapchat), Personal Computers ("PCs"), consoles (such as Nintendo Switch) and other platforms.   Generally, all of the Company's games are free to play, and Zynga generates substantially all of its revenue through the sale of in-game virtual items ("online game revenue") and advertising services ("advertising revenue").   The Company also operates a mobile programmatic advertising and monetization platform.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24.     With massive global reach in more than 175 countries and regions, Zynga has a diverse portfolio of popular game franchises that have been downloaded more than four billion times on mobile including CSR Racing, Empires & Puzzles, FarmVille, Golf Rival, Hair Challenge, Harry Potter: Puzzles & Spells, High Heels!, Merge Dragons!, Merge Magic!, Toon Blast, Toy Blast, Words With Friends and Zynga Poker.   With Chartboost, a leading mobile advertising and monetization platform, Zynga is an industry-leading next-generation platform with the ability to optimize programmatic advertising and yields at scale.

25.     On February 9, 2022, Zynga announced its fourth quarter ("Q4") and full year 2021 financial results and business developments.   The Company achieved record Q4 revenue of $695 million, an increase of 13% year-over-year, and its best-ever quarterly bookings of $727 million, up 4% year-over-year.   Online game or user pay revenue was $534 million, up 7% year-over-year.   Advertising & other revenue was a quarterly record of $161 million, up 37% year-over-year, and advertising & other bookings were an all-time best of $171 million, up 46% year-over-year.   Cost of revenue during the quarter was $260 million or 37% of revenue, compared to 41% of revenue in the year-ago quarter.   Adjusted EBITDA was $147 million, up $57 million year-over-year.   Zynga achieved its highest-ever annual revenue of $2,801 million in 2021, an increase of 42% year-over-year, and the Company's best-ever annual bookings of $2,826 million, up 24% year-over-year. Online game revenue for 2021 was a record $2,249 million, up 35% year-over-year, and user pay bookings were a record $2,265 million, up 15% year-over-year.   Annual advertising & other revenue was a record $551 million, up 79% year-over-year, and advertising & other bookings were a record $561 million, up 83% year-over-year.   Record annual average mobile DAUs were 39 million, up 41% year-over-year, and all-time best annual average mobile MAUs were 184 million, up 107% year-over-year. Reflecting on the Company's record results, defendant Gibeau stated:

> Our strong Q4 results capped off our record 2021 performance where we delivered our highest annual revenue and bookings ever, while reaching the largest mobile audience in Zynga history.  I am proud of our team's execution across all aspects of our growth strategy including live services, new game development and investments in our advertising platform, new markets and technologies to solidify Zynga as a leading mobile-first, free-to-play live services company.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proposed Transaction**

26.     On January 10, 2022, Zynga and Take-Two issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> NEW YORK & SAN FRANCISCO--Jan. 10, 2022-- Take-Two Interactive (NASDAQ: TTWO) (the "Company") and Zynga (NASDAQ: ZNGA), two leaders in interactive and mobile entertainment, today announced that they have entered into a definitive agreement, under which Take-Two will acquire all of the outstanding shares of Zynga in a cash and stock transaction valued at $9.861 per Zynga share, based on the market close as of January 7, 2022, with a total enterprise value of approximately $12.7 billion.  Under the terms and subject to the conditions of the agreement, Zynga stockholders will receive $3.50 in cash and $6.361 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing of the transaction.  The purchase price represents a premium of 64% to Zynga's closing share price on January 7, 2022.
>
> This transformative combination unifies two global leaders in the interactive entertainment business and establishes Take-Two as one of the largest and most diversified mobile game publishers in the industry, with $6.1 billion in pro-forma Net Bookings for the trailing twelve-month period ended September 30, 2021.
>
> Both companies have created and expanded iconic franchises, which will combine to form one of the largest and most diverse portfolios of intellectual properties in the sector.  Take-Two's labels are home to some of the most beloved series in the world, including *Grand Theft Auto®, Red Dead Redemption®, Midnight Club®, NBA 2K®, BioShock®, Borderlands®, Civilization®, Mafia®,* and *Kerbal Space Program®*, while Zynga's portfolio includes renowned titles, such as *CSR Racing™, Empires & Puzzles™, FarmVille™, Golf Rival™, Hair Challenge™, Harry Potter: Puzzles & Spells™, High Heels! ™, Merge Dragons!™, Toon Blast™, Toy Blast™, Words With Friends™,* and *Zynga Poker™*.
>
> **Management Comments**
>
> "We are thrilled to announce our transformative transaction with Zynga, which significantly diversifies our business and establishes our leadership position in mobile, the fastest growing segment of the interactive entertainment industry," said Strauss Zelnick, Chairman and CEO of Take-Two.  "This strategic combination brings together our best-in-class console and PC franchises, with a market-leading, diversified mobile publishing platform that has a rich history of innovation and creativity.  Zynga also has a highly talented and deeply experienced team, and we look forward to welcoming them into the Take-Two family in the coming months. As we combine our complementary businesses and operate at a much larger scale, we believe that we will deliver significant value to both sets of stockholders, including $100 million of annual cost synergies within the first two years post-closing and at least $500 million of annual Net Bookings opportunities over time."
>
> "Combining Zynga's expertise in mobile and next-generation platforms with Take-Two's best-in-class capabilities and intellectual property will enable us to further advance our mission to connect the world through games while achieving significant growth and synergies together," said Frank Gibeau, CEO of Zynga.  "I am proud of our team's hard work to deliver a strong finish to 2021, with one of the best

performances in Zynga's history.  We are incredibly excited to have found a partner in Take-Two that shares our commitment to investing in our players, amplifying our creative culture, and generating more value for stockholders.  With this transformative transaction, we begin a new journey which will allow us to create even better games, reach larger audiences and achieve significant growth as a leader in the next era of gaming."

**Strategic Rationale and Stockholder Value Creation**

With Zynga's stockholders receiving approximately 64.5%[1] of the transaction consideration in Take-Two stock, both groups of stockholders will benefit from the combined company's greater scale, enhanced financial profile, and the synergies created through the transaction.

**Combined company is well-positioned to capitalize on the interactive entertainment industry's strong tailwinds, including a leadership position in mobile.**  The video game sector has experienced rapid growth over the last few years and is now the largest vertical in the entertainment industry[2].  Mobile gaming is the fastest growing segment within the industry, with an estimated $136 billion[2] in gross bookings in 2021, and an expected compound annual growth rate of 8%[2] over the next three years.  The transaction is expected to establish Take-Two as a leader in mobile gaming, with mobile expected to comprise over 50% of its Net Bookings in Fiscal Year 2023 (as compared to an estimated 12% in Fiscal Year 2022).  The transaction will bolster Take-Two's mobile offerings, which include popular games such as *Dragon City, Monster Legends, Top Eleven*, *Two Dots,* and *WWE SuperCard*, and consist of a diverse array of titles that focus on many of the most popular genres in mobile gaming, including casual, hyper-casual, lifestyle, mid-core, puzzle, social casino and sports games.

**Formation of an industry-leading portfolio, comprising Take-Two's best-in-class intellectual properties and Zynga's renowned mobile titles.**  The transaction will create a powerful and diverse portfolio of industry-leading titles that span key platforms and genres across interactive entertainment, developed by some of the most creative and forward-thinking talent within the industry.  By sharing best practices and key data insights across the enterprise, the Company is expected to benefit from significant development and publishing synergies, unlock new revenue streams and reach new audiences around the world.

**The combined entity has significantly greater scale,** with $6.1 billion in Net Bookings, and $769 million[3] in Adjusted Unrestricted Operating Cash Flow on a pro-forma basis for the trailing twelve-month period ended September 30, 2021.  Looking ahead, the combined company is expected to deliver a 14%[4] compound annual growth rate for Net Bookings (excluding the annual Net Bookings opportunities and any future acquisitions) over the three-year period from Take-Two's Fiscal Years 2021 through 2024.

**Addition of Zynga's mobile titles will expand the Company's base of Recurrent Consumer Spending ("RCS").**  Through the addition of Zynga's mobile business, particularly its diversified portfolio of live services and upcoming pipeline of new releases, Take-Two will increase its sources of RCS, a highly-attractive revenue stream that helps reduce volatility across reporting periods that has historically been driven by the cadence of Take-Two's console and PC release slate.

**Take-Two has also identified over $500 million of incremental annual Net Bookings opportunities to unlock over time**, driven by:

- Creation of new mobile games for many of the iconic franchises within Take-Two's portfolio of intellectual property.  Take-Two has an extensive catalog of commercially and critically successful console and PC titles with engaged and loyal communities of players, and there is a meaningful opportunity to create mobile games and new cross-platform experiences for many of these properties. Zynga's nearly 3,000 employees include highly-talented mobile developers, paving the way for Take-Two to accelerate this strategic initiative and introduce its iconic intellectual properties across the fastest-growing platform in the industry.

- Ability to optimize RCS by leveraging the collective knowledge across both companies.  Both Take-Two and Zynga have extensive capabilities to engage players through live operations ("LiveOps") and RCS initiatives.  By combining resources and proven acumen, the teams at Take-Two and Zynga will deploy best-in-class practices throughout the organization to enhance and grow existing titles across the portfolio.  Key opportunities include cross-marketing through a larger, shared customer database and improving game economies through more effective data analytics and machine learning models.

- Other strategic benefits include the use of Zynga's Chartboost advertising platform, which will improve new user acquisition through better audience targeting and optimize mobile advertising inventory to achieve greater yields; geographic expansion into growth markets across Asia, including India, and the Middle East, among other regions; and an enhanced focus on technological innovation and new business models that will utilize the collective knowledge of forward-thinking talent.

**Take-Two expects approximately $100 million of annual cost synergies** within the first two years after closing, primarily driven by the rationalization of duplicative overhead including corporate general and administrative expenses and public company costs, as well as the benefit of scale efficiencies across the enterprise.

**The acquisition is structured to maintain a strong balance sheet**, including significant annual cash generation.  The combined company's strategic and financial flexibility is expected to be greater than each company on a standalone basis, providing Take-Two with the financial resources to continue to invest in talent, development, and innovation, while also pursuing select inorganic growth opportunities.

<u>Leadership</u>

At the close of the transaction, Strauss Zelnick will continue to serve as Chairman and CEO, and the management team of Take-Two will continue to lead the combined company. Zynga's highly skilled and proven management team, led by Frank Gibeau and Zynga's President of Publishing, Bernard Kim, will drive the strategic direction for Take-Two's mobile efforts and will oversee the integration, and day-to-day operations of the combined Zynga and T2 Mobile Games business, which will operate under the Zynga brand as its own label within the Company.  Additionally, Take-Two will expand its Board of Directors to 10 members upon the closing of the transaction to add two members from Zynga's Board of Directors.

## Terms of the Acquisition

Zynga stockholders will receive $3.50 in cash and $6.36[1] in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing. The transaction is valued at $9.86[1] per share of Zynga common stock based on the market closing as of January 7, 2022, implying an enterprise value of approximately $12.7 billion.

The transaction includes a collar mechanism on the equity consideration, so that if Take-Two's 20-day volume weighted average price ("VWAP") ending on the third trading day prior to closing is in a range from $156.50 to $181.88, the exchange ratio would be adjusted to deliver total consideration value of $9.86 per Zynga share (including $6.36 of equity value based on that VWAP and $3.50 in cash). If the VWAP exceeds the higher end of that range, the exchange ratio would be 0.0350 per share, and if the VWAP falls below the lower end of that range, the exchange ratio would be 0.0406 per share.

Within the collar range, the final number of Take-Two shares estimated to be issued on a fully diluted basis will range between approximately 50.3 million and 58.5 million shares. Upon closing of the transaction, current Take-Two stockholders will own between 67.2% and 70.4% and current Zynga stockholders are expected to own between 29.6% and 32.8% of the combined company on a fully diluted basis, respectively, including the shares associated with expected settlement of Zynga's two outstanding series of convertible notes due 2024 and 2026.

As part of the transaction, Take-Two has received committed financing of $2.7 billion from J.P. Morgan and intends to fund the cash component of the transaction through a combination of cash from its balance sheet as well as proceeds of new debt issuance.

The merger agreement provides for a "go-shop" provision under which Zynga and its Board of Directors may actively solicit, receive, evaluate, and potentially enter negotiations with parties that offer alternative proposals during a 45-day period following the execution date of the definitive agreement, expiring on February 24, 2022. There can be no assurance this process will result in a superior proposal. Zynga does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

[1]     *Within a 7.5% symmetrical collar based on a Take-Two share price of $169.19 as the midpoint.*
[2]     *Source: IDG Consulting.* [3]     *Based on the trailing twelve-month period ended September 30, 2021. Combines Take-Two's Adjusted Unrestricted Operating Cash Flow of $467 million and Zynga's Operating Cash Flow of $302 million.*
[4]     *Due to different fiscal year ends, appropriate modifications were made to calculate information based on Take-Two's fiscal year end.*

## Approvals and Close Timing

The transaction, which is expected to be completed during the first quarter of Take-Two's Fiscal Year 2023, ending June 30, 2022, is subject to the approval of both Take-Two and Zynga stockholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The transaction has been unanimously approved by the Take-Two and Zynga Boards of Directors.  Moreover, each director and executive officer of Take-Two and Zynga have entered into voting agreements to support the transaction.

**Advisors**

J.P. Morgan and LionTree Advisors are serving as financial advisors to Take-Two and Willkie Farr & Gallagher LLP is serving as legal counsel.  Goldman Sachs & Co. LLC is acting as financial advisor to Zynga and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel.

**Insiders' Interests in the Proposed Transaction**

27.    Zynga insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Zynga.

28.    Notably, certain Company insiders secured positions for themselves with the combined company following consummation of the merger.  For example, Take-Two will expand its Board of Directors to 10 members upon closing of the transaction to add two members from Zynga's Board of Directors.  Additionally, defendant Gibeau and Zynga's President of Publishing, Bernard Kim, will drive the strategic direction for Take-Two's mobile efforts and will oversee the integration, and day-to-day operations of the combined Zynga and T2 Mobile Games business, which will operate under the Zynga brand as its own label within the combined company.

29.    Moreover, if they are terminated in connection with the Proposed Transaction, Zynga's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1)(2)(3) | Equity ($)(4) | Perquisites / Benefits ($)(5) | Total ($)(6) |
|---|---|---|---|---|
| Frank Gibeau | 5,620,548 | 30,695,422 | 41,236 | 36,357,205 |
| James Gerard Griffin | 1,127,490 | 14,632,740 | — | 15,760,230 |
| Bernard Kim | 1,127,490 | 14,294,736 | — | 15,422,226 |
| Phuong Y. Phillips | 876,240 | 4,057,754 | — | 4,933,994 |
| Jeff Ryan | 797,490 | 3,493,273 | — | 4,290,763 |

***The Registration Statement Contains Material Misstatements or Omissions***

30.    The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Zynga's stockholders.  The Registration Statement misrepresents

or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's, Take-Two's and the combined company's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman.

**Material Omissions Concerning the Company's, Take-Two's and the Combined Company's Financial Projections**

32.     The Registration Statement omits material information regarding the Company's, Take-Two's and the combined company's financial projections.

33.     For example, the Registration Statement sets forth that at the Board's December 11, 2021, meeting, Zynga management reviewed with the Board "an updated version of Zynga's long-range plan that reflected Zynga management's latest thinking based on the performance of Zynga's business." Registration Statement at 67. The Registration Statement, however, fails to disclose how the updated version of Zynga's long-range plan reviewed at the December 11, 2021, Board meeting differed from the Company's long-range plan approved by the Board on October 6, 2021, and differed from the further updated long-range plan approved by the Board on December 29, 2021.

34.     Additionally, with respect to the Company standalone projections, the Registration Statement fails to disclose the line items underlying: (i) Bookings and (ii) Adjusted EBITDA.

35.     With respect to the Company standalone projections, updated as of December 29, 2021, the Registration Statement fails to disclose the line items underlying: (ii) Bookings; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

36.     With respect to the Take-Two Projections, the Registration Statement fails to disclose the line items underlying: (i) Adjusted Net Income; (ii) Adjusted EBITDA; (iii) Adjusted Unrestricted Operating Cash Flow; (iv) and Unlevered Free Cash Flows.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37.     With respect to the combined company's projections, the Registration Statement fails to disclose the line items underlying: (i) Bookings; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow

38.     The omission of this material information renders the statements in the "Take-Two Unaudited Prospective Financial Information" and "Zynga Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Financial Analyses***

39.     The Registration Statement omits material information regarding Goldman's financial analyses.

40.     The Registration Statement describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Zynga's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

41.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Zynga Standalone*, the Registration Statement fails to disclose: (i) quantification of the Company's terminal year unlevered free cash flows; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.0% to 8.0%; (iii) Zynga's net debt as of September 30, 2021; and (iv) Zynga's fully diluted outstanding shares utilized in the analysis.

42.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Combined Company*, the Registration Statement fails to disclose: (i) quantification of the pro forma company's terminal year unlevered free cash flows; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 5.0% to 7.0%; (iii) the pro forma company's net debt; and (iv) the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

estimated number of outstanding shares of common stock of the combined company at the closing of the combination.

43.    Without such undisclosed information, Zynga stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.   In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which Goldman's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

44.    The omission of this material information renders the statements in the "Opinion of Zynga's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

45.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Zynga will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

46.    Plaintiff repeats all previous allegations as if set forth in full.

47.    During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

48.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's, Take-Two's and the combined company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

50.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     The Individual Defendants acted as controlling persons of Zynga within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Zynga, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

56.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Zynga's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Zynga, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1      and any vote on the Proposed Transaction, unless and until defendants disclose and

2      disseminate the material information identified above to Zynga stockholders;

3      B.      In the event defendants consummate the Proposed Transaction, rescinding it and

4      setting it aside or awarding rescissory damages to Plaintiff;

5      C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act,

6      as well as SEC Rule 14a-9 promulgated thereunder;

7      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

8      Plaintiff's attorneys' and experts' fees; and

9      E.      Granting such other and further relief as this Court may deem just and proper.

10

## JURY DEMAND

11      Plaintiff demands a trial by jury on all claims and issues so triable.

12      Dated: March 23, 2022

13

**WEISSLAW LLP**
Joel E. Elkins
By: */s/ Joel E. Elkins*
Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348
Email: jelkins@weisslawllp.com
-and-
Michael A. Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Telephone: 404/692-7910
Facsimile:  212/682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS